UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ZERELEASE HALL o/b/o M.M.,

                              Plaintiff,              11-CV-6317T

              v.                                      **ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security

                              Defendant.
_____

## INTRODUCTION

   Zerelease Hall ("Plaintiff"), on behalf of her minor daughter
("M.M."), brings this action pursuant to Title XVI of the Social
Security Act, seeking review of the final decision of the
Commissioner of Social Security ("Commissioner"), denying her
application for Supplemental Security Income ("SSI").  Plaintiff
alleges that the decision of the Administrative Law Judge ("ALJ"),
Brian Kane, was not supported by substantial evidence in the record
and was based on erroneous legal standards.

   Plaintiff moves for judgment on the pleadings pursuant to Federal
Rule of Civil Procedure 12(c) ("Rule 12(c)") seeking to reverse the
judgement of the Commissioner and remand for calculation of
benefits, or alternatively, for further administrative proceedings.
The Commissioner opposes the motion and cross-moves for judgment on
the pleadings.  This Court finds that the ALJ's decision was
supported by substantial evidence in the record and was in
accordance with the applicable legal standards.  Therefore, for the

reasons set forth below, the Commissioner's motion is granted, and the Plaintiff's motion is denied.    Plaintiff's complaint is dismissed with prejudice.

### BACKGROUND

An application for supplemental security income was filed by Plaintiff on behalf of M.M. on October 19, 2007 alleging disability due to behavioral and emotional problems with an onset date of September 9, 2007.  The claim was initially denied on February 26, 2008.   Plaintiff timely filed a written request for a hearing, which was then scheduled for October 15, 2009.   Plaintiff and Curtis Melton (M.M.'s father) appeared before the ALJ but elected to postpone the hearing to obtain counsel.  On January 8, 2010, Plaintiff, M.M., and their representative appeared in Rochester, New York for the administrative hearing.

In a decision dated March 10, 2010, the ALJ found that M.M. was not disabled within the meaning of the Social Security Act. Transcript of the Administrative Proceeding at 36 (hereinafter "T.").  The Appeals Council denied Plaintiff's request for review on December 14, 2010, rendering the ALJ's decision the final decision of the Commissioner.   (T. 16).  Plaintiff subsequently filed this action on June 27, 2011.

## DISCUSSION

### I. *Jurisdiction and Scope of Review*

42 U.S.C. § 405(g) grants the district courts jurisdiction over claims based on the denial of Social Security benefits.   When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149, 117 S. Ct. 1953, 138 L. Ed. 2d 327 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).   The Court's scope of review is limited to whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the claim.   Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003).   The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983).

Under Rule 12(c), judgment on the pleadings may be granted "where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).   If, after reviewing the record, the Court is convinced that

3

Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings is appropriate.  See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## II. *The Commissioner's decision to deny benefits was supported by substantial evidence in the record.*

The ALJ applied the Social Security Administration's three-step analysis for determining whether an individual under the age of 18 is entitled to disability benefits.  Under the regulations, a child is disabled if:

> (1) the child has not performed substantial gainful activity;
>
> (2) the child has a severe impairment or combinations of impairments that are severe;
>
> (3) the impairments or combination of impairments meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404 Appendix 1.

20 C.F.R. § 416.924(a).

In making his determination, the ALJ found that M.M. was a school-age child, had not performed substantial gainful activity, had the following severe impairments, "oppositional defiant disorder" and "probable borderline intellectual functioning," and did not meet or medically equal one of the listed impairments. (T. 30).  In the final step, the ALJ found that M.M. did not have

4

an impairment or combination of impairments that functionally equaled the listings. (T. 30-36). The ALJ thus concluded that M.M. was not disabled within the meaning of the Social Security Act. (T. 36). This Court finds that the ALJ's decision was supported by substantial evidence in the record and based on the appropriate legal standards.

M.M. was born on April 16, 1997. (T. 111). Between July 1998 and March 2002, she was monitored for high lead levels by blood tests performed every few months. (T. 309-10, 314-21). There is no indication in M.M.'s medical records that lead exposure directly caused any of M.M.'s manifest symptoms.

Upon reaching grade school, M.M. had difficulty meeting the Rochester City School District's ("School District") standards in reading and math. (T. 159). Her teachers developed an academic intervention plan, and she repeated the first grade in 2004. (T. 157-59). M.M. was referred to School Psychologist Jessica Hayden for evaluations that were conducted in November 2004 and February 2005. (T. 178). Ms. Hayden found that M.M. demonstrated mild oppositional behaviors when frustrated and testing put her cognitive ability in the low average range. (T. 181).

On January 16, 2007 Christine Ransom, Ph.D., conducted a child psychiatric evaluation. (T. 234-37). She diagnosed M.M. with oppositional defiant disorder ("ODD"), presenting as mild, and probable borderline intellectual capacity. Id. Dr. Ransom

recommended an assessment of intellectual capacity. (T. 236). Dr. K. Prowda, a state agency psychiatric consultant, concurred with the diagnosis in his report dated February 13, 2008. (T. 239). Although Dr. Prowda found M.M.'s impairments severe, he determined that they did not result in a marked limitation of functioning. (T. 238-243).

M.M. continued in her school's special needs program. Her Annual Review Recommendation, dated April 20, 2007, indicated strengths in math and written expression but difficulties with reading, short term memory, and cognitive efficiency. (T. 150). She fell within the low-average range academically. Id. M.M. interacted well with children and adults but she could become verbally and physically aggressive during periods of frustration. (T. 151). The Recommendation concluded that M.M. no longer required a special education teacher for the full day. Id.

In May 2009, M.M. was referred by her teachers to the Committee on Special Education because of her intensity of verbal aggression. (T. 253). Her teachers were concerned that her emotional and social needs outweighed the available resources. Id. M.M. was subsequently evaluated by Certified School Psychologist Mark D. Mummery. (T. 253-57). In his report dated May 28, 2009, he indicated that M.M.'s behavior had declined over the past year, she often wrote or drew violent imagery, and her family had experienced economic difficulties resulting in parental separation and

placement with several shelters. (T. 253). Test results for cognitive abilities and academic achievement were generally in the low average to below average range but improved slightly from the same tests performed on February 25, 2008. (T. 254, 257). Mr. Mummery concluded that M.M. was delayed in her reading and writing abilities and that her cognitive skills were in the low average range. (T. 256). In the behavior assessment, ten of fifteen subtests fell in the clinically significant range with the remaining five classified as at risk. (T. 257). Six of the fifteen metrics fell below two standard deviations of the mean. Id. These results had declined from the previous year's assessment. (T. 254). Mr. Mummery recommended a mental health and psychiatric evaluation as well as a counseling assessment. (T. 256).

Speech-Language Assessments were conducted by Speech Therapist Meghan Lomb on May 26, 2009 and Speech Language Pathologist Jennifer Sopko on February 1, 2010. (T. 245-51, 331-36). Both assessments indicated a mild to moderate delay in language fundamentals; only the visual vocabulary test was ranked severe. (T. 246-47, 333). The 2009 assessment resulted in a recommendation for continued speech and language support reduced to two times a week for the following school year. (T. 250). After the 2010 assessment, Ms. Sopko opined that M.M. no longer required speech-language services. (T. 336).

The record also contained three school disciplinary reports dated November 2, 5, and 11, 2009 noting incidents of M.M. choking another student, swearing at teachers, and locking a teacher in an office. (T. 208-210). A Teacher-School Questionnaire ("School Questionnaire") was completed on November 19, 2009 by an unknown individual (signature illegible). (T. 185-92). No problem was indicated in four domains and only slight to obvious problems were noted in the domains of Acquiring and Using Information and Interacting and Relating with Others. (T. 184, 186). No serious or very serious problems were reported in any domain. Id.

Plaintiff and M.M. appeared with their representative for the administrative hearing before ALJ Kane on January 8, 2010. (T. 49). M.M. briefly testified about her school and family. (T. 53-55). Plaintiff then testified that her daughter has difficulty reading and writing, communicates better with younger children, can be disrespectful to adults, gets into fights, and has been suspended from school twenty-seven times in the current school year. (T. 56-63).

Plaintiff argues that the ALJ should have (1) ordered a consultative intelligence exam, (2) found that M.M.'s history of high lead level and speech-language delays were severe impairments, and (3) determined that her impairments met listing 112.05(A) or 112.08. Plaintiff also argues (4) the finding that M.M.'s impairments were not functionally equivalent to the listings is not

8

supported by substantial evidence, and (5) the ALJ failed to apply the correct legal standards when assessing the Plaintiff's credibility.

## A. *The ALJ was not required to order a consultative intelligence examination.*

It is the agency's responsibility to develop the record and obtain a claimant's medical history.  See 20 C.F.R. § 416.912(d). Since Social Security proceedings are non-adversarial, the ALJ must objectively "investigate the facts and develop the arguments both for and against granting benefits."  See Sims v. Apfel, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80, 88 (2000).  It is the ALJ's duty to develop the administrative record even if a claimant is represented by counsel.  See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).

An ALJ may be required to order a consultative examination when there is a conflict, inconsistency, or insufficiency in the evidence that must be resolved before a determination can be made. See 20 C.F.R. § 416.919a(b).  A consultative examination is unnecessary if the record contains sufficient information on which to base the decision.  See Serianni v. Astrue, No. 6:07-CV-250, 2010 WL 786305, at *5, 2010 U.S. Dist. LEXIS 17758, at *13 (N.D.N.Y Mar. 1, 2010).

Plaintiff argues that the ALJ was required to obtain a consultative intelligence examination and that in this regard the

ALJ failed to develop the record.  Plaintiff points to Dr. Ransom's January 16, 2007 report that recommended an assessment of intellectual capacity.  (T. 236).

Despite Plaintiff's contentions, a number of cognitive and achievement tests were performed since Dr. Ransom's recommendation. M.M.'s Annual Review Recommendation for the 2007-2008 school year concluded that she performed in the low-average range academically. (T. 150).  Cognitive and Academic Achievements tests administered on February 25, 2008 and May 22, 2009 by School Psychologist Mummery put M.M. in the below average to average range in nearly all subtests.  (T. 254, 257).  Further, results improved between the two exams.  Id.  Given Dr. Ransom's diagnosis of "probable borderline intellectual capacity" and the consistency of M.M.'s school performance and test results with that diagnosis, the ALJ had sufficient information to determine the severity of M.M.'s impairments.  Accordingly, this Court finds that a consultative examination was not required, and the ALJ sufficiently developed the record with respect to M.M.'s intellectual capacity.

**B. *The ALJ's determination that M.M.'s history of high lead levels and speech-language delay were not severe impairments is supported by substantial evidence.***

Plaintiff asserts the ALJ erred at step two of the analysis because he did not find M.M.'s history of high lead levels and speech-language delay were severe impairments.  A finding of

disability requires a physical or mental impairment or combination of impairments that causes marked or severe functional limitations. See 20 C.F.R. § 416.906.  At step two, an impairment is only considered severe if it significantly limits a child's physical or mental abilities.  See 20 C.F.R. § 416.921.  An impairment must be medically determinable and result in "more than minimal functional limitations."  20 C.F.R. § 416.924(c).

M.M.'s medical records show a history of high lead levels. (T. 309-10, 314-21).  This condition was monitored between July 1998 and March 2002, but was never treated.  (T. 259).  Although medical and school reports in the record note M.M.'s history of elevated lead levels, there is no medical evidence demonstrating that it resulted in any physical or mental limitations.  Therefore, the Court finds that the ALJ's decision regarding M.M.'s lead levels is supported by substantial evidence.

The ALJ also properly excluded M.M.'s speech-language delay at step two.  (T. 30).  Her speech and language abilities were evaluated twice by the School District.  (T. 245-51, 331-36).  Both assessments found a mild to moderate delay in overall language abilities.  (T. 250, 336).  Only the picture vocabulary test scored in the severe range (7th percentile).  (T. 247, 333).  Speech Therapist Lomb recommended M.M. continue speech-language services in the 2009-2010 school year but reduced the frequency to two times a week.  (T. 250).  Speech Language Pathologist Sopko opined in

2010 that speech-language services were no longer required  and stated that any issues could be addressed in the classroom. (T. 336).  Accordingly, the Court finds that there is substantial evidence in the record to support the finding that M.M.'s speech-language delay was not a severe impairment.

C. *The ALJ's determination that M.M.'s impairments do not meet or medically equal one of the listed impairments is supported by substantial evidence.*

The ALJ found that M.M.'s impairments did not meet or medical equal the listings, stating "[t]he claimant's impairments do not equal any [impairment] contemplated in the 'listings.'"  (T. 30). Plaintiff claims that the ALJ erred by failing to provide specific reasons why the evidence does not meet any of the listings found in 20 C.F.R. Part 404 Appendix 1.  Plaintiff asserts that the record supports a finding of disability based on the criteria in listing 112.05(A) and 112.08.[1]

If the claimed symptoms and medical evidence support the criteria described by a listing, the ALJ must give an explanation why a claimant does not meet or equal the listing.  See Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002).  If the ALJ does not provide reasons for rejecting a listed impairment, the court

---

[1] The ALJ did not simply neglect to consider a claimed listing.  At the hearing, Plaintiff's representative presented that a finding of "disability should be made not on a listing but on equivalence."  (T. 53).

can look to other parts of the decision and credible evidence in
the record to determine if the rejection was supported by
substantial evidence.  See Berry v. Schweiker, 675 F.2d 464, 469
(2d Cir. 1982).  For a finding of disability based on a listing,
the claimant's impairments must satisfy all the listing's criteria.
20 C.F.R. § 416.925(d).  The combined effect of all the claimant's
impairments must be considered, including those determined not to
be severe in step two.  See 42 U.S.C. § 1382c(a)(3)(G); 20 C.F.R.
§§ 416.923, 416.924a(b)(4).

Listing 112.05(A) requires a "significantly subaverage general
intellectual functioning with deficits in adaptive functioning" as
well as two criteria from listing 112.02(B)(2).  Listing 112.08
requires "deeply ingrained, maladaptive patterns of behavior" that
are typical of long term functioning as well as two criteria from
listing 112.02(B)(2).  Listing 112.02(B)(2) requires marked
impairments in two of (a) cognitive/communicative function, (b)
social functioning, (c) personal functioning, or (d) difficulties
in maintaining concentration, persistence, or pace.  The
regulations define a marked limitation as a serious limitation of
function or two standard deviations below the mean in an
appropriate standardized test.  See 20 C.F.R. § 416.926a(e)(2).

Plaintiff argues that requirements of listing 112.05(A) and
112.08 are met and that M.M. has marked impairments in her
cognitive/communicative functions and social functions to meet the

13

additional requirements of listing 112.02(B)(2). Substantial
evidence in the record warrants against a finding of disability
based on listing 112.05(A) and 112.08.

The first requirement of listing 112.05(A) cannot be met because
M.M. does not have significantly subaverage intelligence.
Dr. Ransom diagnosed M.M. with probable borderline intellectual
functioning. (T. 236). More recent evaluations by School
Psychologist Mummery also showed cognitive ability and academic
achievement in the low average range. (T. 254, 257).

Further, the record does not support that M.M. has a deeply
ingrained, long-term maladaptive pattern of behavior required by
listing 112.08. The 2007-2008 Individual Education Program report
stated that M.M. is a "friendly child who interacts well with peers
and adults." (T. 151). Dr. Ransom diagnosed only mild ODD and
stated that M.M. may have mild difficulty "maintaining appropriate
social behavior" and "interacting adequately with peers and
adults." (T. 236). More recently, the November 2009 School
Questionnaire reported no serious or very serious problems in the
domain of interacting and relating with others. (T. 188).

Finally, the record does not support a finding of two marked
impairments from listing 112.02(B)(2). Ms. Lomb and Ms. Sopko
found only a mild to moderate delay in overall language skills
which supports a less than marked limitation in
cognitive/communicative function. (T. 250, 336). Dr. Ransom

14

diagnosed M.M. with only mild ODD, (T. 236), and the School Questionnaire did not indicate any serious or very serious problems in the area of social functioning, (T. 188). The ALJ's finding that M.M.'s impairments do not equal the listings is therefore supported by substantial evidence.

D. *The ALJ's determination that M.M.'s impairments were not functionally equivalent to the listings is supported by substantial evidence.*

At step three, functional equivalence to the listings is determined by considering the child's abilities in six functional domains. See 20 C.F.R. § 416.926a(b)(1). These domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. See id.

A marked limitations in two domains or an extreme limitation in one domain constitutes a disability. See 20 C.F.R. § 416.926a(d). A marked limitation is a serious limitation, while an extreme limitation is a very serious limitation. See 20 C.F.R. § 416.926a(e)(2). If a standardized test is available for the domain, a score below two standard deviations of the mean is a marked limitation, and a score below three standard deviations of the mean is an extreme limitation. See Id. When evaluating test scores, the ALJ does not need to find a marked or extreme

15

limitation if other information in the record shows that the child's functioning is not seriously or very seriously limited. See 20 C.F.R. § 416.926a(e)(4).   When evaluating the child's functioning, the combined effect of all impairments must be considered regardless of the severity determined in step two.   See 42 U.S.C. § 1382c(a)(3)(G); 20 C.F.R. §§ 416.923, 416.924a(b)(4).

Plaintiff asserts that the record supports a marked or extreme limitation in the domains of acquiring and using information and interacting and relating to others.   Plaintiff first argues that the ALJ's decision lacks analysis and "discussed only a minimal amount of relevant evidence," thus rendering the basis of the decision unclear and unsupported.   For the domain acquiring and using information, the ALJ noted that M.M. "is of borderline to low average intelligence, but is making adequate academic progress in school."  (T. 32).   For the domain interacting and relating to others, the ALJ referenced the 2009 School Questionnaire and noted that M.M. had difficulty expressing anger appropriately and respecting adults.  (T. 34).   Both determinations were followed by a finding that there was no evidence of a significant limitation in either domain.   Although a more detailed discussion of the evidence would be helpful, if "the ALJ's rationale can be perceived from the evidence in the record, a remand for clarification is unnecessary." See Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112-13 (2d Cir. 2010).

16

For school-age children, the domain acquiring and using information considers their ability to read, write, use language, do math, and learn other subjects. See 20 C.F.R. § 416.926a(g)(2)(iv). Substantial evidence supports the ALJ's finding of a less than marked limitation in this domain. Dr. Ransom diagnosed M.M. with "probable borderline intellectual capacity." (T. 236). Also, M.M.'s grade six report card indicated that she partly met New York State and school district standards, (T. 193-94), and the School Questionnaire did not indicate any serious or very serious problems in this domain. (T. 186). Academic achievement testing by School Psychologist Mummery showed M.M. scored above two standard deviations in eleven out of twelve subtests in both February 2008 and May 2009. (T. 254, 257). Thus, a less than marked limitation is supported by substantial evidence in the record.

In the domain of interacting and relating with others, factors to consider include development of emotional connections to people, use of language, compliance with rules, proper responses to criticism, and respect for other people. 20 C.F.R. § 416.926a(i). Substantial evidence supports a less than marked limitation in this domain as well. M.M.'s 2007-2008 Annual Review Recommendation stated that she is a "friendly child who interacts well with peers and adults." (T. 151). Dr. Ransom diagnosed only mild ODD. (T. 236). The School Questionnaire reported no serious or very

serious problems in this domain.  (T. 188).  Additionally, the speech-language assessments showed only a mild to moderate delay in overall skills.  (T. 250, 336).

Only Mr. Mummery's behavioral assessment and the school disciplinary reports support a marked limitation.  (T. 253-57). However, since there are no marked limitations in the other five domains, only an extreme limitation in this domain would support a finding of disability.  In Mr. Mummery's assessment, the majority of subtests scored above three standard deviations.  Only two of fifteen subtests in the 2009 assessment were below three standard deviations of the mean, making a finding of an extreme limitation unwarranted. (T. 257).  Additionally, the disciplinary reports and Mr. Mummery's assessment must be weighed against the reports of positive behavior in the record.  Considering all of M.M.'s impairments together, substantial evidence supports the ALJ's decision of a less than marked limitation and his ultimate finding that M.M.'s impairments do not functionally equal the listings.

Plaintiff further objects to the ALJ's statement that he has "basically adopted the findings reported by the State agency pediatric consultant."  (T. 32).  An ALJ is "responsible for reviewing the evidence and making findings of fact and conclusions of law."  See 20 CFR § 416.927(e)(2).  The opinions of state consultants may be relied on by an ALJ, and their findings can constitute substantial evidence.  See id.  In this case, the ALJ

noted in his decision the regulations that instruct how state consultant opinion evidence should be evaluated, and there is nothing to suggest that the regulations were not followed. (T. 31). Accordingly, the Court finds that the ALJ properly relied on the findings of the state agency consultant.

**E. *The ALJ's credibility determination is supported by the record.***

Plaintiff argues that the ALJ failed to apply the appropriate legal standards for assessing her credibility. The regulations provide that a parent can testify towards the symptoms of his or her child when the child cannot describe them fully. See 20 C.F.R. § 416.928(a). Credibility of witnesses is primarily determined by the ALJ, not the courts. See Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1982). When assessing credibility, a conclusory statement is not sufficient; the ALJ's decision must contain specific reasons supported by evidence in the record. See SSR 96-7P, 1996 WL 374186, *4 (S.S.A.). The decision must explain to the individual and a reviewing court the weight given to the testimony and the reasons for the determination. See id.

In this case, Plaintiff gave testimony concerning her daughter's condition. The ALJ found that Plaintiff's description of her daughter's symptoms are not credible to the extent that they are inconsistent with findings of M.M.'s functional limitations and

unsupported by the medical and school records.  (T. 31).  After a thorough review of the record in this case, this Court finds that the ALJ's decision is supported by the record.  Accordingly, the Court finds Plaintiff's arguments regarding the ALJ's credibility assessment meritless.

## **CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision to deny benefits was supported by substantial evidence in the record.  Therefore, I grant the Commissioner's motion for judgment on the pleadings and deny Plaintiff's motion.  Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:  June 11, 2012
        Rochester, New York